IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JILL BJORKLUND, MOLLIE JO BLAHUNKA, and PATRICK JOSEPH HURLEY II a/k/a PJ HURLEY,<br><br>Plaintiffs,<br><br>v.<br><br>ANKENY COMMUNITY SCHOOL DISTRICT and JODIE GRAHAM, individually and in her official capacity,<br><br>Defendants. | No. 4:24-cv-00184-RGE-WPK<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING MOTION FOR STAY |

## I.   INTRODUCTION

Defendants Ankeny Community School District and Jodie Graham, the Executive Director of Human Resources for the School District, filed a motion to dismiss for failure to state a claim or in the alternative to stay this action. Plaintiffs are teachers in the School District who filed a state-court action against Defendants asserting claims under the Iowa Civil Rights Act and the Iowa Constitution. Plaintiffs allege injuries based on Defendants' response to Plaintiffs' support for the School District's student LGBTQ+ club, the Gender Sexuality Alliance. Plaintiffs also allege injuries based on Defendants' response to Plaintiffs' attendance at a student-run drag show sponsored by the Alliance.

Plaintiffs did not include a federal First Amendment claim in their state-court complaint, but asserted free-speech interference and retaliation claims under the Iowa Constitution. The Iowa Supreme Court subsequently eliminated direct causes of action under the Iowa Constitution, which the parties agree defeated Plaintiffs' then-pending state-law free speech claims.

After Plaintiffs filed first-amended and second-amended state-court complaints,

Defendants moved unsuccessfully for summary judgment on an "associational discrimination" claim. While an interlocutory appeal of that ruling was pending with the Iowa Supreme Court, Plaintiffs filed the instant federal complaint. Plaintiffs also sought to dismiss the appealed claim in state court without prejudice, asserting a desire to moot the state appeal, restore jurisdiction to the state trial court, and generally expedite proceedings in the state trial court. Defendants resisted, arguing any voluntary dismissal should be with prejudice. Ultimately after a limited remand and a return to the Iowa Supreme Court, the Iowa Supreme Court dismissed the interlocutory appeal without deciding whether voluntary dismissal of the appealed claim should be treated as a dismissal with or without prejudice.

Plaintiffs' federal complaint, which is the target of the pending motions to dismiss or stay, is nearly identical to the operative state-court complaint, but asserts freedom of speech and association claims under the First Amendment to the United States Constitution. Plaintiffs' federal complaint asserts claims that mirror those asserted in the state court—the same Defendants, the same underlying facts, and same alleged injuries.

The Court denies the motion to dismiss as untimely, but grants the motion for a stay of this action pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), pending resolution of the nearly identical, underlying state-court case.

## II. BACKGROUND

In ruling on Defendants' motion to dismiss, the Court views the facts alleged in the complaint in the light most favorable to Plaintiffs. *See Ingram v. Arkansas Dep't of Corr.*, 91 F.4th 924, 927 (8th Cir. 2024). In ruling on a motion for a stay, the Court may consider matters outside the pleadings. *See Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 971–72 (8th Cir. 2013). The Court may consider the underlying state-court action as it presently stands, including information concerning activity in the state case. *Id.* at 970–71, 971 n.5 (discussing a party's

"shifting positions" and arguments in separate litigation when addressing the propriety of a stay); *see also Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 535–40 (8th Cir. 2009) (addressing progress of separate suits). Many factors the Court is required to consider for determining the propriety of a stay depend on material beyond the pleadings. *See infra* at 10 (identifying relevant factors).

### A.  Factual Background

Several students from the Gender Sexuality Alliance club organized an end-of-year party that included a drag show. Defs.' Ex. 3 Supp. Mot. Dismiss or Stay ¶¶ 3–4, 18–21, ECF No. 4-4 (Second Amended Petition and Jury Demand, No. LACL154951 (Iowa Dist. Ct., Polk Cnty.)); *see also* Compl. ¶¶ 3–5, 20–23, ECF No. 1. The party was sponsored by the Alliance. ECF No. 4-4 ¶¶ 3–4; ECF No. 1 ¶¶ 3–5. The Alliance is a recognized student-activity club in the School District, and the School District requires recognized clubs to have faculty sponsors. ECF No. 4-4 ¶¶ 3, 18–21; ECF No. 1 ¶¶ 4, 20–23. Plaintiffs Mollie Jo Blahunka and Jill Bjorklund serve as the Alliance's faculty sponsors, Blahunka for the high school and Bjorklund for the middle school. ECF No. 4-4 ¶ 21; ECF No. 1 ¶ 23. Blahunka and Plaintiff Patrick Joseph Hurley are "openly queer staff members, and Bjorklund [is] a vocal ally and parent of a LGBTQ+ student who attends Ankeny schools." ECF No. 4-4 ¶ 26; ECF No. 1 ¶ 28.

The end-of-year party took place on school grounds outside of school hours in a reserved space. ECF No. 4-4 ¶¶ 47–66; ECF No. 1 ¶¶ 49–68. In preparing for the party and reserving the space, the organizing students and faculty sponsors received no objections from Defendants or from persons responsible for the logistics of reserving space. *Id.* Students organized the end-of-year party, which included a social period of approximately forty-five minutes with ice cream and other snacks followed by a drag show performance by one of the Alliance's students and two performers of similar age who were not students in the School District or Alliance members. ECF

3

No. 4-4 ¶¶ 67–75; ECF No. 1 ¶¶ 69–77.

Bjorklund and Blahunka attended the event as the club's faculty sponsors, and Hurley attended as the invited guest of the club's student who performed. ECF No. 4-4 ¶ 73; ECF No. 1 ¶ 75. Plaintiffs participated as audience members, cheering and tipping performers by holding dollar bills in their hands in the air for performers to take with their hands. ECF No. 4-4 ¶¶ 71–73, 106, 158, 227; ECF No. 1 ¶¶ 73–75, 109, 161, 230. Families attended the show and the dances performed were similar in style to dances performed by the schools' dance teams. ECF No. 4-4 ¶¶ 69, 79; ECF No. 1 ¶¶ 71, 81. Performers dressed in gender non-conforming outfits, but neither performers nor audience members exposed themselves. ECF No. 4-4 ¶¶ 70, 78; ECF No. 1 ¶¶ 72, 80. "The performers wore full body jumpsuits, dance leotards, and shirts and pants." ECF No. 4-4 ¶ 70; ECF No 1 ¶ 72. "The performers did dance moves that are seen all the time at Ankeny dance team or show choir performances. The performances were objectively similar to years of performances done by the 'Spice Boys,' all of whom were male student-athletes, not student members of the LGBTQ+ student club, dressed in female cheerleader sweaters and skirts, wigs, and makeup who performed dance routines at mandatory high school pep rallies." ECF No. 4-4 ¶ 79; ECF No. 1 ¶ 81. No families in attendance registered complaints. ECF No. 4-4 ¶¶ 4–5; ECF No. 1 ¶¶ 5–6. Another faculty member who is not a club sponsor attended at least a part of the show. ECF No. 4-4 ¶ 73; ECF No. 1 ¶ 75.

After the show, persons not in attendance complained to the School District, and the superintendent sent an email to all parents announcing an investigation. ECF No. 4-4 ¶ 80; ECF No. 1 ¶ 82. Plaintiffs allege student members of Alliance were bullied and had food thrown at them at lunch following the announcement. ECF No. 4-4 ¶ 81; ECF No. 1 ¶ 84. Defendants then interrupted Blahunka's class while she was teaching to call her out and announce the commencement of investigations. ECF No. 4-4 ¶ 166, ECF No. 1 ¶ 169. At a meeting the following

4

day, Defendants placed Blahunka on immediate administrative leave and told her she was not permitted to talk to parents, students, or staff. ECF No. 4-4 ¶ 167; ECF No. 1 ¶ 170. Defendants also called Bjorklund and Hurley into meetings and placed them on immediate administrative leave. ECF No. 4-4 ¶¶ 114, 241–45; ECF No. 1 ¶¶ 117, 244–48. Defendants banned Plaintiffs from School District grounds, threatened their teaching licenses, and filed ethics complaints against Plaintiffs with the Iowa Board of Educational Examiners. ECF No. 4-4 ¶¶ 124–32, 173–82, 253–71; ECF No. 1 ¶¶ 127–35, 176–85, 256–74. The Iowa Board of Educational Examiners eventually dismissed the complaints finding any violations that may have occurred would have been violations of district rules, not ethical violations. ECF No. 4-4 ¶¶ 144–46, 197–99, 279–81; ECF No. 1 ¶¶ 147–49, 200–02, 282–84. Before the Iowa Board of Educational Examiners dismissed the complaints, the School District placed "Last Chance Agreements" in each Plaintiff's file, signifying that any further infraction, minor or otherwise, could result in immediate termination. ECF No. 4-4 ¶¶ 141–42, 194–95, 276–77; ECF No. 1 ¶¶ 144-45, 197-98, 279–80.

Additional facts are set forth below as necessary.

    **B.**    **Procedural Background**

        **1.**    **State Court Proceedings**

Plaintiffs filed their initial Petition in the Iowa District Court in Polk County on February 14, 2023. Defs.' Ex. 1 Supp. Mot. Dismiss or Stay, ECF No. 4-2 (Petition and Jury Demand, No. LACL154951 (Iowa Dist. Ct., Polk Cnty.)). The Petition contained three counts: Count I "Violation of the Iowa Civil Rights Act Sexual Orientation Discrimination and Associational Discrimination," *id.* ¶¶ 275–83; Count II "Violation of the Iowa Civil Rights Act Retaliation," *id.* ¶¶ 284–89; and Count III "Interference With Speech in Violation of Article 1, Section 7 of the Iowa Constitution," *id.* ¶¶ 290–94. The retaliation claim, Count II, alleged Defendants retaliated against Bjorklund for Bjorklund having previously reported Defendants as

5

discriminating against LBGTQ+ students and treating the Alliance differently than other student clubs. *Id.* ¶¶ 290–94. The other claims were alleged by all Plaintiffs collectively.

On April 11, 2023, Plaintiffs filed a First Amended Petition adding a fourth count brought by all Plaintiffs alleging retaliation for exercising protected speech: Count IV "Retaliation in Violation of Article 1, Section 7 of the Iowa Constitution." Defs.' Ex. 2 Supp. Mot. Dismiss or Stay ¶¶ 296–304, ECF No. 4-3 (First Amended Petition and Jury Demand, No. LACL154951 (Iowa Dist. Ct., Polk Cnty.)).

In May 2023, the Iowa Supreme Court eliminated direct causes of action for money damages under the Iowa constitution. *See Burnett v. Smith*, 990 N.W.2d 289, 307 (Iowa 2023) ("[W]e no longer recognize a standalone cause of action for money damages under the Iowa Constitution unless authorized by the common law, an Iowa statute, or the express terms of a provision of the Iowa Constitution."), *overruling Godfrey v. State*, 898 N.W.2d 844 (Iowa 2017). Approximately seven months later, on December 14, 2023, and in apparent response to the Iowa Supreme Court's *Burnett* ruling, Plaintiffs filed a Second Amended Petition. Plaintiffs removed their Counts III and IV which had asserted claims under *Godfrey*, and separated out their earlier Count I discrimination claim into claims of direct discrimination against the homosexual Plaintiffs and associational discrimination against all Plaintiffs. ECF No. 4-4 ¶¶ 286–302. Plaintiffs also added a new claim under the Iowa Civil Rights Act. *Id.* ¶¶ 309–18. The Second Amended Complaint therefore contained newly numbered Counts as follows: Blahunka and Hurley asserted Count 1 "Violation of the Iowa Civil Rights Act Sexual Orientation Discrimination," *id.* ¶¶ 286–94; all Plaintiffs asserted Count II "Violation of the Iowa Civil Rights Act Associational Discrimination," *id.* ¶¶ 295–302; Bjorklund asserted Count III "Violation of the Iowa Civil Rights Act Retaliation," *id.* ¶¶ 303–08; and all Plaintiffs asserted Count IV "Violation of the Iowa Civil Rights Act Discrimination for Obeying the Provisions of Chapter

6

216," *id.* ¶¶ 309–18. Count IV, although captioned as a discrimination claim, asserts facts describing retaliation: Plaintiffs assert Iowa Code Chapter 216.11 prohibits discrimination on the basis of gender and sexual orientation, and asserts Defendants "disciplined and publicly humiliated Plaintiffs for obeying the provisions of Iowa Code Chapter 216." *Id.* ¶ 312.

Approximately nine months later, Defendants moved for summary judgment on Plaintiffs' Count II for associational discrimination under the Iowa Civil Rights Act. Plaintiffs successfully defended their claim, and the state trial court denied the motion on February 7, 2024. Defs.' Ex. 5 Supp. Mot. Dismiss or Stay, ECF No. 4-6 (Ruling First Mot. Part. Summ. J., No. LACL154951 (Iowa Dist. Ct., Polk Cnty.)). Defendants sought permission to file an interlocutory appeal, which the Iowa Supreme Court granted on May 1, 2024. Defs.' Ex. 6 Supp. Mot. Dismiss or Stay, ECF No. 4-7 (Order Grant Interloc. Appeal, No. 24-0368 (Iowa)).

In response, Plaintiffs filed a motion under Iowa Rule of Civil Procedure 1.943 to voluntarily dismiss their Count II associational discrimination claim to expedite state-court proceedings on the remaining counts. Defs.' Ex. 7 Supp. Mot. Dismiss or Stay 1–6, ECF No. 4-8 (Pls' Notice Vol. Dismissal, No. 24-0368 (Iowa)). Defendants resisted, arguing the state trial court was divested of jurisdiction with the grant of permission for the interlocutory appeal. *Id.* at 7–10. The Iowa Supreme Court ordered a limited remand for the state trial court to rule on the motion. Defs.' Ex. 8 Supp. Mot. Dismiss or Stay, ECF No. 4-9 (Order Remand, No. 24-0368 (Iowa)). The state trial court permitted dismissal of Count II without prejudice. Defs.' Ex. 9 Supp. Mot. Dismiss or Stay, ECF No. 4-10 (Order Dismiss Count II, No. LACL154951 (Iowa Dist. Ct., Polk Cnty.)). The Iowa Supreme Court then asked the parties whether any issues remained pending. Defs.' Ex. 10 Supp. Mot. Dismiss or Stay, ECF No. 4-11 (Order Issues Remaining, No. 24-0368 (Iowa)). Plaintiffs argued the interlocutory appeal should be dismissed and Count II should be recognized as being voluntarily dismissed without prejudice. Defendants argued the relevant Iowa Rule did

7

not recognize the dismissal of counts but rather the dismissal of petitions and that any dismissal of a count should be with prejudice. Defs.' Ex. 11 Supp. Mot. Dismiss or Stay, ECF No. 4-12 (Defs.' Stmt., No. 24-0368 (Iowa)). The state trial court found dismissal without prejudice appropriate. ECF No. 4-10.

Ultimately, the Iowa Supreme Court dismissed the interlocutory appeal and elected to not resolve the outstanding question of whether the dismissal of Count II should be treated as a dismissal with or without prejudice. Order Non-Resolution, No. 24-0368 (Iowa Aug. 29, 2024); Procedendo, No. 24-0368 (Iowa Sept. 26, 2024).[1] The last word from the state trial court on the status of Count II identified dismissal without prejudice. ECF No. 4-11. The Iowa Supreme Court, however, expressly described the question as unresolved. Order Non-Resolution, No. 24-0368 (Iowa Aug. 29, 2024).

### 2. Federal Proceedings

Meanwhile, on May 29, 2024, while the parties' state-court appellate proceedings regarding the dismissal of the Count II associational-discrimination claim were taking place, Plaintiffs filed their federal complaint in this Court. ECF No. 1. This case includes two counts: Count I "Interference With Speech in Violation of the First Amendment under 42 U.S.C. § 1983," *id.* ¶¶ 286–97; and Count II "Retaliation in Violation of the First Amendment under 42 U.S.C. § 1983." ECF No. 1 ¶¶ 298–310. Plaintiffs sent a waiver of service of summons to Defendants on June 10, 2024. Waiver, ECF No. 3. Defendants returned the waiver of service on June 17, 2024, acknowledging Defendants "must file and serve an answer or a motion under Rule 12 within sixty days from 06/10/2024[.]" *Id.* Defendants filed the present motion on August 16, 2024, sixty-seven

---

[1] The Court may take notice of matters of public record including court orders. *See Levy v. Ohl*, 477 F.3d 988, 991-92 (8th Cir. 2007) ("The district court, therefore, did not err in denying [the] motion . . . and in relying upon a public record, the state court dismissal. It was not necessary to convert the motion to dismiss to one for summary judgment.").

8

days after Plaintiffs sent the summons. Defs.' Mot. Dismiss. Stay, ECF No. 4. At the time Defendants filed the present motion to dismiss or stay, the parties had submitted their final statements regarding dismissal of the state-court Count II to the Iowa Supreme Court, but the interlocutory appeal remained pending.

In their briefing, Defendants characterize Plaintiffs' simultaneous state and federal actions as impermissible claim splitting. Defs.' Br. Supp. Mot. Dismiss or Stay 4–12, ECF No. 4–1. Defendants argue Plaintiffs must bring all claims arising from a common nucleus of operative facts in one proceeding. *Id.* In response, Plaintiffs argue bans on claim splitting relate to multiple actions in the same or equivalent courts: multiple suits in one or more federal courts. Pls.' Resist Defs.' Mot. Dismiss or Stay 9–10, ECF No. 8. Plaintiffs note that none of the authority Defendants cite in their brief deals with claims brought simultaneously in state and federal court. *Id.* at 8. Plaintiffs assert analysis of situations involving simultaneous state actions and non-declaratory-judgment federal court actions must be addressed under the rubric of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), because issues of federal and state authority and interactions come into play. *Id.* at 5–8. In their reply, Defendants agree *Colorado River* provides an appropriate framework for analysis and argue the actions are parallel and the federal action should be dismissed or stayed. Defs.' Reply Supp. Mot. Dismiss or Stay 1–5, ECF No. 11.

The Court finds the parties' briefing and exhibits adequately present the issues without the need for oral argument. *See* LR 7(c); Fed. R. Civ. P. 78(b). The Court decides the parties' motions as set forth below.

### III.   DISCUSSION

#### A.   Motion to Dismiss

If a party waives service, a motion to dismiss is due sixty days "after the request was sent." Fed. R. Civ. P. 4(d)(3). But a party who files a motion out of time may request that the district

court "'for good cause, extend the time . . . if the party failed to act because of excusable neglect.'" Fed. R. Civ. P. 6(b)(1)(B). "The primary measure of good cause is the movant's diligence in attempting to meet deadlines." *Albright as Next Friend of Doe v. Mountain Home Sch. Dist.*, 926 F.3d 942, 951 (8th Cir. 2019) (internal citation omitted). Whether a missed deadline should be excused "is at bottom an equitable inquiry." *Spirit Lake Tribe v. Jaeger*, 5 F.4th 849, 854 (8th Cir. 2021) (citation omitted).

Defendants filed their motion to dismiss out of time. Plaintiffs sent their request to waive service on June 10, 2024, and Defendants filed their motion to dismiss on August 16, 2024, sixty-seven days later. *See* ECF No. 4. Defendants request that their untimeliness be excused, arguing the slight tardiness of their motion caused no prejudice. *See* ECF No. 11 at 5. But Defendants otherwise offer no explanation nor attempt any showing of "good cause" or "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The Court denies the motion to dismiss as untimely.

**B.    Motion to Stay**

**1.    Legal Standard**

**a.    Parallel Proceedings**

"Federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them which does not evaporate simply because there is a pending state court action involving the same subject matter." *Spectra Commc'ns Group, LLC v. City of Cameron, Mo.*, 806 F.3d 1113, 1121 (8th Cir. 2015) (quoting *Colorado River*, 424 U.S. at 817 (cleaned up)). But when a "parallel" action is pending in state court, a federal court may stay its case in the interests "of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," if several factors demonstrate "exceptional" circumstances favor a stay. *Colorado River*, 424 U.S. at 817, 818 (citations omitted).

State and federal actions are parallel under *Colorado River* if "a substantial similarity . . .

exist[s] between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Cottrell v. Duke*, 737 F.3d 1238, 1245 (8th Cir. 2013) (quoting *Fru–Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir.2009)). "When any doubt exists as to the parallel nature of concurrent state and federal proceedings, the district court cannot utilize *Colorado River* to refuse its jurisdiction." *Id.*; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) ("When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.").

"To determine whether parallel proceedings exist," courts are to "compar[e] the sources of law, required evidentiary showings, measures of damages, and treatment on appeal for each claim." *Id.* (citation omitted). But "[t]o constitute parallel proceedings, state and federal actions need not be mirror images." *Fru-Con Const.*, 574 F.3d at 541 n.10 (Shepherd, Circuit Judge, dissenting for a majority of the court as to the issue of parallelism); *see also id.* at 540 (Bye, Circuit Judge, joining the dissent in part).

### b. Exceptional Circumstances

If parallel proceedings exist, the Court must consider the following factors when addressing whether "exceptional circumstances" also exist:

> (1) whether there is a *res* over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., Inc.*, 48 F.3d 294, 297 (8th Cir. 1995)

(quotation omitted). In some cases, select factors may be neutral, and in all cases, the factors "are not intended to be exhaustive, nor are they to be mechanically applied. Rather, they are to be pragmatically applied in order to advance the 'clear federal policy' of avoiding piecemeal adjudication." *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16). Ultimately, "the decision whether to [stay] a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case with the balance heavily weighted in favor of the exercise of jurisdiction."). *Moses H. Cone*, 460 U.S. at 16 (applying *Colorado River*).

2.     Analysis

a.     **Parallel Proceedings**

The Court concludes the pending state and federal actions are parallel. The actions involve the same parties with claims arising from one discrete set of facts, alleged almost verbatim in the state and federal pleadings. Plaintiffs allege harm arising from these facts based on viewpoint interference, speech suppression, and unlawful retaliation. The sources of law between the two actions differ: the Iowa Civil Rights Act (ICRA) governs the state law claims whereas the First Amendment to the United States Constitution governs the federal claims. But the evidentiary showings required for the state and federal claims differ little, and treatment on appeal does not differ. The alleged injuries are the same, and aside from the theoretical possibility of punitive damages against the individual defendant in the federal case, the measure of damages are the same. *See Cottrell*, 737 F.3d at 1245.

Looking first at the state complaint, "Iowa Code section 216.6(1)(a) forbids discriminatory employment practices based on a protected characteristic, while section 216.11(2) forbids discriminatory and retaliatory employment practices because the employee engaged in a protected activity." *Hawkins v. Grinnell Reg'l Med. Ctr.*, 929 N.W.2d 261, 269 (Iowa 2019). The ICRA

states:

> It shall be an unfair or discriminatory practice for any: Person to . . . discharge any employee, or to otherwise discriminate in employment against . . . any employee because of the . . . sex, sexual orientation, [or] gender identity . . . of such . . . employee . . . unless based upon the nature of the occupation.

Iowa Code § 216(6)(1)(a). The ICRA also states:

> It shall be an unfair or discriminatory practice for: . . . Any person to discriminate or retaliate against another person in any of the rights protected against discrimination by this chapter because such person has lawfully opposed any practice forbidden under this chapter, obeys the provision of this chapter or has filed a complaint, testified, or assisted in any proceeding under this chapter.

*Id.* § 216(11)(2).

Count I of the operative state-court Petition alleges sexual orientation discrimination and does not correspond to a claim in the Federal case. ECF No. 4-4 ¶¶ 286–94; ECF No. 1 ¶¶ 286–310. Count II, the associational discrimination claim, has been dismissed. But the Iowa Supreme Court left undecided the question of whether dismissal was with or without prejudice. Count III alleges retaliation based on speech, specifically Bjorklund's earlier complaints to the School District regarding unequal treatment of the Alliance as compared with other recognized student clubs in the School District. ECF No. 4–4 ¶¶ 303–08. Finally, Count IV alleges "Violation of the Iowa Civil Rights Act Discrimination for Obeying the Provisions of Chapter 216." *Id.* ¶¶ 309–18. Count IV is in the nature of a retaliation claim based on the Plaintiffs' support and attempted defense of the student group and its members. *Id.*

In comparison, Count I of the federal complaint alleges interference "with Plaintiffs' ability to associate freely in public and express Plaintiffs' views and support for the LGBTQ+ community." ECF No. 1 ¶ 289. And Count II of the federal complaint alleges "Defendants acted in retaliation against Plaintiffs, and for the purposes of deterring Plaintiff[s] from exercising Plaintiffs' rights under the First Amendment to free speech and assembly," *id.* ¶ 306, in that

"Defendants acted with the intent to suppress Plaintiff[s'] speech because of its content and in particular because it was supportive of LGBTQ+ students and of drag performances," *id.* ¶ 307. These federal claims, like Counts III and IV of the state complaint, require proof of animus motivating acts of retaliation and a causal connection between that intent and Plaintiffs' injuries. *See e.g.*, *Aldridge v. City of St. Louis*, 75 F.4th 895, 898–99 (8th Cir. 2023) (identifying the inquiry as whether the official acted " in retaliation for the [plaintiffs'] exercise of their First Amendment right" and stating, "In other words, the plaintiffs must demonstrate they were 'singled out' due to their protected expression"). Count IV of the state complaint appears to present the broadest claim among both actions.

The Court sees little difference between the required showings of animus and resultant harm when looking at the state and federal claims. The two actions are parallel as required to examine the "exceptional circumstances" factors from *Colorado River*. *See Window World Int'l, LLC v. O'Toole*, 21 F.4th 1029, 1034 (8th Cir. 2022) ("As *Moses H. Cone* made clear, there must be pending parallel state and federal court proceedings before the *Colorado River* doctrine is implicated."). To the extent Plaintiffs assert their demand for punitive damages distinguishes their federal claims from their state claims, there appears to be no distinction between the evidence and arguments to be presented in support of the state and federal claims. Moreover, the thrice-asserted facts from the state-court complaints, as carried over to the federal complaint, do not appear to support a level of malice or ill intent associated with Defendants' actions as required to support an award of punitive damages. *See Royal v. Kautzky*, 375 F.3d 720, 724 (8th Cir. 2004) ("A factfinder may assess punitive damages in a section 1983 action when a 'defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983))).

The federal claims arguably are narrower than the state claims in that, to maintain First

Amendment claims related to the workplace, Plaintiffs must also show the speech they engaged in qualifies as protected speech, i.e. that they were acting as citizens related to a matter of public interest rather than as employees pursuant to official duties. *See Davenport v. Univ. of Ark. Bd. of Trustees*, 553 F.3d 1110, 1113 (8th Cir. 2009). After all, "[w]hen making a statement pursuant to . . . official duties, a public employee is not speaking as a citizen." *Id.* (discussing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)); *see also Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 801 (8th Cir. 2004) ("[T]he plaintiff must demonstrate that she has engaged in protected speech (speech on a matter of public concern), that her interest as a citizen in commenting on the issue outweighs the public employer's interest in promoting efficient public service, and that her speech was a motivating factor in the action taken against her.").

The fact that Plaintiffs' federal First Amendment claims may require *additional* proof to establish the protected nature of their speech, however, does not mean the proceedings are not parallel. The first state complaint included essentially identical free speech claims asserted under the Iowa Constitution rather than the United States Constitution at a time when *Godfrey* was controlling law in Iowa. *Godfrey v. State*, 898 N.W.2d 844 (Iowa 2017). The facts alleged in the initial state court complaint, and realleged in the first-amended and second-amended complaint, represent the facts Plaintiffs asserted as sufficient to support their free-speech *Godfrey* claims. When the Iowa Supreme Court reversed itself and overruled *Godfrey* in *Burnett v. Smith*, 990 N.W.2d 289, 307 (Iowa 2023), Plaintiffs amended their complaint to eliminate their *Godfrey* claims, but Plaintiffs did not amend their theory of liability or the facts asserted to support that theory. Then Plaintiffs alleged those same facts in federal court. Although Plaintiffs eliminated their *Godfrey* claims, Plaintiffs do not demonstrate how the elements and required proof for their federal claims materially differ from what they had initially pleaded in state court or how the federal claims differ from their remaining state claims.

### b. Colorado River Factors

Several *Colorado River* factors carry little weight in the present case. Neither the Iowa nor federal court has assumed jurisdiction over any res or property; neither court is more or less convenient for the parties; and nothing about the present case suggests either forum might be inadequate to protect Plaintiffs' rights. *See, e.g.*, *Spectra Comm'ns Grp.*, 806 F.3d at 1121 ("The first two factors are irrelevant in this case because there is no res at issue, and the state and federal fora are equally convenient."). Several factors, however, strongly support the conclusion that "exceptional circumstances" justify the entry of a stay.

First, maintaining both actions will lead to piecemeal litigation. In *Colorado River* itself, this factor carried great weight because the case involved the adjudication of water rights and "clear federal policy . . . [urged] avoidance of piecemeal adjudication of water rights in a river system." 818–19. There is no similar "overarching" principle in the present civil rights action that is on par with the adjudication of a river system as in *Colorado River*. That type of overarching principle, however, is not required for a court to find this factor important in a case, and the Eighth Circuit has described this factor as "predominant." *Spectra Comm'ns Grp.*, 806 F.3d at 1121. ("[T]he risk of piecemeal litigation, is the 'predominant factor' and is a significant concern here . . . . [T]he state and federal cases involve the same issues [and] the federal and state courts could reach conflicting opinions on the same issues, which could cause unwarranted friction between state and federal courts, a result which is obviously undesirable and avoidable in this instance." (citations omitted)). Avoiding parallel proceedings regarding one alleged injury will reduce redundant litigation efforts and eliminate the potential for inconsistent outcomes between the federal and state courts.

Second, the state case has priority. The state case was filed more than a year prior to the federal case and at least one motion for summary judgment has been addressed and appealed,

whereas the federal court stay motion was filed before any motion practice in the federal case. This history matters because timing alone is not determinative of priority. *See Moses H. Cone*, 460 U.S. at 21 (noting that courts are not to "give[] too mechanical a reading to the 'priority' element of the *Colorado River* balance" and concluding, "this factor, as with the other *Colorado River* factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."). The substantial proceedings in state court and the early motion for a stay in the federal case weigh in favor of giving the state case priority.

Third, regarding whether federal or state law controls, the parties draw the court's attention to no material difference in the required proof of animus and harm. Moreover, the state action in this instance is the more complete action; it includes a claim of direct discrimination against members of a protected class, Count I, permitting the parties to advance all arguments surrounding the contested events. *See* ECF No. 4-4 ¶¶ 286–94; *see also Spectra Comm'ns Grp.*, 806 F.3d at 1122 ("[O]ur cases have advanced [the policies underlying *Colorado River*] by favoring the most complete action." (quoting *Federated Rural*, 48 F.3d at 298)); *U.S. Fid. & Guar. Co. v. Murphy Oil USA, Inc.*, 21 F.3d 259, 263 (8th Cir.1994).

## IV.   CONCLUSION

The Court finds the overall history of the state and federal proceedings between the present parties to be exceptional. Plaintiffs initially filed their suit without a federal First Amendment claim, arguably to avoid removal. When the Iowa Supreme Court eliminated the possibility of similar state constitutional claims in *Burnett*, Plaintiffs amended their complaint but again chose not to add a federal First Amendment claim. Then, when amending their complaint again, Plaintiffs repeated their purposeful omission of a federal constitutional claim, but nevertheless, articulated a

17

novel claim of retaliation in the form of a claim rooted in viewpoint discrimination or animus: Count IV's claim of retaliation for Plaintiffs having attempted to comply with Iowa Code Chapter 216 regarding transgender students. ECF No. 4–4 ¶¶ 309–18. Having so carefully maintained their viewpoint retaliation claim under a different label, and having successfully defended their associational discrimination claim in the state trial court before dismissing it during an interlocutory appeal, the present attempt to maintain a parallel action is exceptional.

**IT IS ORDERED** that Defendants Ankeny Community School District and Jodie Graham's Motion to Dismiss, ECF No. 4, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Ankeny Community School District and Jodie Graham's Motion to Stay, ECF No. 4, is **GRANTED**. The parties shall inform the Court upon resolution of the parallel state case.

**IT IS SO ORDERED.**

Dated this 10th day of February, 2025.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE